951 F.2d 349
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Terry L. FREED, Plaintiff-Appellee, Cross-Appellant,
v.
Thomas H. OEHMKE, Defendant-Appellant, Cross-Appellee.
 Nos. 91-1168, 91-1170.
 United States Court of Appeals, Sixth Circuit.
 Dec. 13, 1991.
 
 Before DAVID A. NELSON and SUHRHEINRICH, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal from a judgment entered on an arbitration award. The award was not made until some months after a deadline set by the court and agreed to by the parties, and the appellant contends that the delay rendered the award invalid. We disagree, and we shall affirm the judgment.
 
 
 2
 * In February of 1989 plaintiff Terry L. Freed, a citizen of Idaho, filed a legal malpractice action against his former attorney, Thomas H. Oehmke, a citizen of Michigan. The case was brought in the United States District Court for the Eastern District of Michigan, and it was referred to a mediation panel pursuant to Local Rule 32 of that jurisdiction. The panel recommended that Oehmke pay Freed $15,000 to settle the case. Mr. Freed accepted the panel's recommendation, but Mr. Oehmke rejected it.
 
 
 3
 A final pretrial conference was held on January 2, 1990, at which time District Judge Bernard A. Friedman urged the parties to submit their dispute to arbitration. He emphasized that the arbitration would be conducted on an expedited basis, which would save time and money. The parties accepted the court's suggestion, and on January 8, 1990, the court issued an order referring the case to binding arbitration. The order said that the arbitration hearing would be held no later than January 30, and that the arbitrators' decision would be issued no later than February 28, 1990.
 
 
 4
 On January 16th the court issued an order adopting an agreement signed by the litigants submitting the dispute to arbitration. The agreement said, among other things, that the "arbitrators shall issue a written opinion and award before 28 February 1990;" that the parties were bound by "all prior orders of th[e] court;" and that "[a]ny dispute, controversy, or claim arising out of or relating to this Agreement to Arbitrate, or the breach, termination, or invalidity thereof, shall be settled by this Court, as a matter of law and upon motion."
 
 
 5
 By January 17th the parties had agreed on the composition of a three-member arbitration panel. The neutral arbitrator took no action for several weeks, and Judge Friedman wrote to him on February 7th to ask that he "proceed to conduct a hearing as expeditiously as possible to satisfy the time requirements of the parties and the order of this court."
 
 
 6
 The arbitrator appointed by Mr. Oehmke resigned due to illness on February 7th. He was replaced on February 16th. Meanwhile, in response to a request by Mr. Freed that he be given at least 16 days advance notice before the scheduling of any hearings, Mr. Oehmke wrote to Freed's attorney insisting "that the arbitration in this matter conclude before the end of this month (February, 1990), as ordered by the court."
 
 
 7
 The arbitrators scheduled a final pretrial conference for February 21st, but the neutral arbitrator unilaterally rescheduled it for the 27th. Realizing that the arbitration could not possibly be concluded on schedule, Mr. Oehmke did not attend the conference. Instead, he filed a motion in the district court seeking a stay of arbitration on the ground that the authority of the arbitrators had expired. The court denied Mr. Oehmke's motion, noting that the arbitration agreement did not provide that time was of the essence and pointing out that the delay was due to circumstances beyond the control of the parties.
 
 
 8
 The arbitration process then went forward, with hearings being held on May 18 and 19, 1990. On August 10, 1990, the arbitrators issued an opinion awarding Mr. Freed $47,572.83. Mr. Oehmke moved to vacate the award, but the district court denied the motion and entered judgment on the award. Mr. Freed filed a Motion to Assess and Tax Mediation Sanctions pursuant to Local Rule 32(j), asking for an additional $7,887.50 in non-attorney fee costs. The motion was denied. Mr. Oehmke appeals from the judgment, and Mr. Freed cross-appeals from the denial of sanctions.
 
 II
 
 9
 Mr. Oehmke argues that the district court lost jurisdiction over the case when it referred the matter to arbitration. The arbitrators had authority to act only until February 28, 1990, he contends, and when that deadline passed, the arbitrators authority expired and Mr. Freed lost the opportunity to litigate his claim.
 
 
 10
 We do not believe that the district court was without jurisdiction to decide the dispute that arose out of the arbitrators' failure to complete their work on time. The order referring the case to arbitration expressly provided that "[a]ny dispute, controversy, or claim arising out of or relating to this Agreement to Arbitrate, or the breach, termination, or invalidity thereof, shall be settled by this Court, as a matter of law and upon motion."
 
 
 11
 The district court did not err in allowing the arbitration process to continue past February 28th. In disputes over the scope of an arbitration agreement, "a court must recognize a strong presumption in favor of arbitrability." Matter of Arbitration No. AAA13-161-0511-85, 867 F.2d 130, 133 (2d Cir.1989). Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) (emphasis supplied).
 
 
 12
 It is true that the arbitration agreement adopted by the district court's order stated that "[t]he arbitrators shall issue a written opinion and award before 28 February 1990," but it is also true that the arbitration agreement did not say that time was of the essence. Nothing in the facts presented compels the conclusion that the February 28 date--which was initially suggested by the district court--was so central to the parties' undertaking that the entire agreement depended on it. The district court concluded, in effect, that the deadline was not meant to be mandatory, but "was a goal set to encourage prompt determination of the arbitrable issue." Jones v. St. Louis-San Francisco Ry. Co., 728 F.2d 257, 265 (6th Cir.1984). We cannot say that this conclusion was erroneous.
 
 
 13
 Even if the district court had declined to let the arbitration proceed, we see no basis at all for Mr. Oehmke's suggestion that the case would simply have been dismissed. The district court would have been required to try the case itself, and we have no way of knowing whether the court would have decided the case before the arbitrators did. Any prejudice by reason of delay appears purely conjectural.
 
 III
 
 14
 Mr. Freed's cross-appeal argues that the district court erred in denying the arbitration costs that were sought as a mediation sanction pursuant to Local Court Rule 32(j). That rule provides that if the parties agree to mediation and one party rejects the mediator's recommendation, the other party is entitled to expanded costs if he ultimately recovers an award that is more than 10 percent higher than the mediator's recommendation.
 
 
 15
 The district court relied on Tiedel v. Northwestern Michigan College, 865 F.2d 88 (6th Cir.1988), in holding that there was authority for imposing the sanction. Mr. Freed attempts to distinguish Tiedel on the ground that it dealt only with attorney fees. What Tiedel said, however, was this:
 
 
 16
 "If a general rule may be read in Alyeska Pipe Line and its progeny, it is that the Supreme Court will not allow itself or other federal courts to vary the uniform scheme of costs and fees as set forth in the 1853 Fee Act, other than those narrowly defined circumstances of cases involving bad faith or abusive litigation, disobedience of court orders or the common fund doctrine." Id. at 93-94 (emphasis supplied).
 
 
 17
 The district court was correct in concluding that it had no authority to award the expanded costs sought by Mr. Freed.
 
 
 18
 AFFIRMED.